17 F.3d 1437
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Julio Perez ORTEGA, Plaintiff-Appellant,
v.
Sam GONZALES, Chief of Police; J.D. Sharp, Sheriff,
Oklahoma County Jail; Tom Pevny, M.D.; Mary K.
Gumerlock, Department of Neurosurgery,
Defendants-Appellees.
 No. 93-6232.
 United States Court of Appeals, Tenth Circuit.
 Feb. 17, 1994.
 
 Before TACHA and BRORBY, Circuit Judges, and BROWN,** Senior District Judge.
 ORDER AND JUDGMENT[1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 On March 17, 1991, Oklahoma City jail inmate Julio Perez Ortega was severely beaten by two inmates, causing injuries to his back. Mr. Ortega was taken immediately by ambulance to the South Community Hospital. He was x-rayed, diagnosed as having a contusion of the lower spine, given pain medication, and released. No special instructions were given to the jail regarding his condition. Notes show that he was given his medication, and that two days later he reported feeling much better. R. I, Doc. 32, Exh. 10.
 On the morning of March 20, jailers noted that Mr. Ortega was unable to walk. Mr. Ortega was taken to South Community Hospital by patrol car but was returned to the jail that afternoon. The following day, he was still unable to walk, and orders were given that food and medication should be brought to his bedside. On March 22, Mr. Ortega was transferred to the Oklahoma county jail.
 Upon transfer, the county jail was made aware that Mr. Ortega had been injured at the city jail. He was given a medical exam immediately and was housed in a hospital cell, where he was seen by a physician at least once per week. The physician's notes indicate on several occasions that Mr. Ortega needed crutches to ambulate, and that thirty minutes of walking per day was recommended. Records requested from South Community Hospital indicated that Mr. Ortega suffered from congenital back problems, with a history of spina bifida. On April 16, he began developing marked weakness in his legs, and on April 19 was seen by physician Tom Pevny at Oklahoma Memorial Hospital. Dr. Pevny conducted several tests, recommended that Mr. Ortega continue to walk with crutches, and prescribed pain medication.
 From the beginning of May 1991, Mr. Ortega received daily treatment at the county jail as his condition deteriorated. After suffering some type of convulsions, he was brought to Oklahoma Memorial Hospital by ambulance on May 5, 1991. Mr. Ortega was admitted to the hospital on May 8 under Dr. Gumerlock's care, underwent spinal surgery on May 22, and was discharged to a rehabilitation center on June 12. Mr. Ortega returned to the county jail for the period between November 11, 1991 and December 6, 1991; he then transferred to the Lexington Correctional Center.
 Mr. Ortega is currently confined to a wheelchair. He brought this action pursuant to 42 U.S.C.1983 against Sam Gonzales, the Chief of Police in Oklahoma City; J.D. Sharp, the Sheriff of Oklahoma County; Tom Pevny, the physician who treated Mr. Ortega at Oklahoma Memorial Hospital; and Mary Gumerlock, the neurosurgeon who treated Mr. Ortega at Oklahoma Memorial Hospital. Mr. Ortega alleges that defendants rendered him a paraplegic, and in doing so, subjected him to cruel and unusual punishment and deprived him of due process of law. The district court granted summary judgment in favor of all defendants, and Mr. Ortega appeals.
 We review a grant of summary judgment de novo, applying the same standards as those used by the district court. Pride v. Does, 997 F.2d 712, 716 (10th Cir.1993). Summary judgment is appropriate when "the pleadings [and] depositions ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When making this assessment, "we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir.1990).
 Because Mr. Ortega was a pretrial detainee when these events occurred, we examine his claims under the Fourteenth Amendment's due process clause rather than under the Eighth Amendment. Frohmader v. Wayne, 958 F.2d 1024, 1028 (10th Cir.1992). A prisoner is deprived of due process if, through deliberate indifference, he is denied adequate medical care. Id. "Deliberate indifference to serious medical needs may be shown by proving there are such gross deficiencies in staffing, facilities, equipment, or procedures that the inmate is effectively denied access to adequate medical care." Garcia v. Salt Lake County, 768 F.2d 303, 308 (10th Cir.1985).
 A review of Mr. Ortega's pleadings reveals no such allegations regarding the physicians, Dr. Pevny and Dr. Gumerlock. The complaint alleges, at most, that these medical professionals were negligent. Mere allegations of negligence in diagnosis or treatment, without more, are insufficient to establish a constitutional violation. Davidson v. Cannon, 474 U.S. 344, 347-48 (1986); Estelle v. Gamble, 429 U.S. 97, 106 (1976). Such tort claims are more appropriately brought in state court. The district court, therefore, did not err in granting summary judgment on Mr. Ortega's claims against these defendants.
 It is not clear from the complaint whether Mr. Ortega sued Chief Gonzales and Sheriff Sharp in their individual or official capacities. Because Mr. Ortega brought this action pro se, his complaint will be liberally construed to allege claims against Gonzales and Sharp in both their capacities. Cf. Houston v. Reich, 932 F.2d 883, 885 (10th Cir.1991)(when complaint does not clearly indicate capacity in which defendants sued, determination should be made by reviewing course of proceedings); Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir.1988)(pro se prisoner's complaint held to a less stringent standard).
 Because the doctrine of respondeat superior does not apply to 1983 actions, superiors such as Chief Gonzales and Sheriff Sharp cannot be held liable individually unless they affirmatively participated or acquiesced in the constitutional violations. Winters v. Board of County Comm'rs, 4 F.3d 848, 855 (10th Cir.1993). Here, Mr. Ortega does not claim that either Gonzales or Sharp participated in any of the alleged unconstitutional acts, or that they knew of such acts and acquiesced in their occurrence. Further, it is uncontradicted that Gonzales did not even become Chief of the Oklahoma City Police Department until October 1991. The district court, therefore, did not err in granting summary judgment in favor of Gonzales and Sharp in their personal capacities.
 A claim against a public official acting in his official capacity is equivalent to a claim against the public entity for which the official works. Watson v. City of Kansas City, 857 F.2d 690, 695 (10th Cir.1988). To hold the public entity liable, the alleged constitutional violation must result from a governmental policy or custom. Id.; see also Winters, 4 F.3d at 855.
 Mr. Ortega alleges that the city deprived him of due process by not classifying or supervising the inmates held in custody in the city jail. Mr. Ortega has not shown any specific deficiency in the city's policies regarding inmate classification or security, only alleging that such policies were nonexistent or inadequate. In contrast, the city has submitted its written policies on both these subjects, demonstrating that such policies exist. A municipal policy cannot be inferred from a single incident of constitutional deprivation, instead, independent evidence of the city's policy must be provided. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (plurality), 830-31 (Brennan, J., concurring) (1985).
 
 
 1
 To invoke the due process clause, a prisoner must demonstrate a policy of deliberate indifference to his safety, and the mere allegation that prison officials were negligent in failing to protect him will not support an action under 1983. Davidson, 474 U.S. at 347-48. This is not a situation where city officials are shown to have ignored reports of persistent violence or a threat to a particular prisoner's safety. Compare Berry v. City of Muskogee, 900 F.2d 1489, 1498 (10th Cir.1990); Matzker v. Herr, 748 F.2d 1142, 1148-50 (7th Cir.1984).
 
 
 2
 Mr. Ortega's claim against the city for inadequate medical care also does not demonstrate a municipal policy or custom which resulted in deprivation of Mr. Ortega's constitutional rights. Rather, the evidence demonstrates that Mr. Ortega was provided immediate medical care after the incident, was placed under constant medical supervision, and was cared for as instructed by hospital personnel. Summary judgment in favor of the city, therefore, was appropriate.
 
 
 3
 Mr. Ortega's claims against the county also do not allege a policy or custom which caused him constitutional injury. Mr. Ortega alleges several incidents of inadequate care, including that he was infrequently bathed, that he was left to lie in his own urine, and that he was not given bowel training when he so requested. Even if these incidents deprived Mr. Ortega of his constitutional right to adequate care, there is absolutely no evidence that such acts were motivated by a county policy or custom. Mere "conclusory allegations" that adequate medical care was not provided, without more, will not subject the county to 1983 liability. Meade, 841 F.2d at 1531.
 
 
 4
 Finally, Mr. Ortega alleges that the district court's denial of his motion for an attorney and an interpreter deprived him of his right of access to the courts. Mr. Ortega was provided with a Spanish speaking legal assistant throughout the initial briefing stages of this case. R. I, Doc. 38. His complaint and the accompanying material were drafted, therefore, with bilingual legal assistance. Despite such assistance, Mr. Ortega's pleadings and attachments were found insufficient to allege and support claims under 1983. Thus, the failure to appoint an attorney and interpreter did not deprive Mr. Ortega of his right of access to the courts. See, e.g., Cruz v. Hauck, 627 F.2d 710, 721 & n. 21 (5th Cir.1980)(meaningful access for inmates who do not speak English may include paralegal and paralibrarian assistance).
 
 
 5
 The decision whether to appoint counsel is left to the sound discretion of the district court. Miller v. Glanz, 948 F.2d 1562, 1572 (10th Cir.1991). Counsel is appropriate when "it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it." Id. (quoting McCarthy v. Weinberg, 753 F.2d 836, 838 (10th Cir.1985)). Here, Mr. Ortega has not presented a colorable claim. Further, counsel was denied because "Plaintiff appears to be receiving adequate assistance in the processing of [ ]his case." R. I, Doc. 36. We hold that the district court did not abuse its discretion in not appointing counsel for Mr. Ortega.
 
 
 6
 Mr. Ortega's motion for appointment of counsel is DENIED, and the judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 **
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470